1  **UNITED STATES DISTRICT COURT**

2  **NORTHERN DISTRICT OF CALIFORNIA**

3  **SAN JOSE DIVISION**

4

5  ROSALVA M. MADRID,                    Case No.  14-cv-05380-BLF

   Plaintiff,

6

   v.                                     **ORDER DENYING PLAINTIFF'S**
7                                          **MOTION FOR SUMMARY**
                                           **JUDGMENT; AND GRANTING**
8  CAROLYN W. COLVIN, Acting              **DEFENDANT'S MOTION FOR**
   Commissioner of Social Security,       **SUMMARY JUDGMENT**
9
   Defendant.                             [Re:  ECF 11, 14]
10

11

12         Plaintiff Rosalva M. Madrid appeals a final decision of Defendant Carolyn W. Colvin,

13  Acting Commissioner of Social Security, denying her application for a period of disability and

14  disability insurance benefits under Title II of the Social Security Act.  Before the Court are the

15  parties' cross-motions for summary judgment, which have been fully briefed.  Upon consideration

16  of the briefing[1] and for the reasons set forth below, the Court DENIES Plaintiff's motion and

17  GRANTS Defendant's motion.

18  **I.     BACKGROUND**

19         Plaintiff, a United States citizen, was born on February 4, 1961.  Admin. R. ("AR") 107.

20  She completed the twelfth grade, obtained a cosmetology license, and most recently worked as a

21  photocopy machine operator.  AR 18, 58, 143.  She also has past relevant work as a clerical

22  assistant/data entry and as a mail clerk.  AR 18.  She is married and lives with her husband and her

23  adult daughter.  AR 15.

24         On September 19, 2011, Plaintiff filed an application for a period of disability and

25  disability insurance benefits, alleging disability beginning January 17, 2011.  AR 107.  Plaintiff

26  claims disability resulting from diabetes and resulting fatigue, vision problems, and pain and

27

28  ───────────────
    [1] This matter was submitted without oral argument pursuant to Civil Local Rule 16-5.

United States District Court
Northern District of California

numbness in her feet.  AR 15-16.  Plaintiff also is obese.  AR 16.  Plaintiff's medical records indicate that Plaintiff first was diagnosed with diabetes during her second pregnancy, at age thirty-two.  AR 291.  Postpartum she was off treatment until the age of thirty-seven, when she presented with blurred vision and thirst.  *Id.*  Her weight steadily increased and eventually she was started on insulin.  *Id.*  Plaintiff was forty-nine on her alleged onset date and later that year her primary diagnosis was "Type 2 diabetes complicated by retinopathy and neuropathy, with long history of being uncontrolled."[2]  AR 193.

Plaintiff was denied benefits initially and upon reconsideration.  AR 76-77.  She requested and received a hearing before an administrative law judge ("ALJ"), which was held on May 30, 2013.  AR 49-75.  At the hearing, the ALJ heard testimony from Plaintiff and from a vocational expert ("VE").  On August 22, 2013, the ALJ issued a written decision finding Plaintiff not disabled and thus not entitled to benefits.  AR 10-20.  The ALJ's decision was affirmed by the Appeals Council on April 8, 2014, making the ALJ's decision the final decision of the Commissioner of Social Security.  AR 1-3.  Plaintiff now seeks judicial review of the denial of benefits.

## II.    LEGAL STANDARD

### A.    Standard of Review

District courts "have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 USC § 405(g).  However, "a federal court's review of Social Security determinations is quite limited."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).  Federal courts "'leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.'"  *Id.* (quoting *Treichler*

---

[2] Diabetic retinopathy is a condition in which high glucose levels result in damage to retinal blood vessels.  *Parmer v. Washington Dep't of Corr.*, No. C11-5390 RBL/KLS, 2013 WL 550477, at *3 (W.D. Wash. Jan. 15, 2013).  The blood vessels can bleed spontaneously and eventually destroy the retina.  *Id.*  Neuropathy is "a painful nerve disorder that causes numbness, burning, and stinging sensations."  *Kirkish v. Mesa Imports, Inc.*, No. CV-08-1965-PHX-NVW, 2010 WL 364183, at *2 (9th Cir. Feb. 1, 2010).

United States District Court
Northern District of California

1  *v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014)).

2  A court "will disturb the Commissioner's decision to deny benefits only if it is not

3  supported by substantial evidence or is based on legal error." *Brown-Hunter*, 806 F.3d at 492

4  (internal quotation marks and citation omitted). "Substantial evidence is such relevant evidence as

5  a reasonable mind might accept as adequate to support a conclusion, and must be more than a

6  mere scintilla, but may be less than a preponderance." *Rounds v. Comm'r of Soc. Sec. Admin.*,

7  807 F.3d 996, 1002 (9th Cir. 2015) (internal quotation marks and citations omitted). A court

8  "must consider the evidence as a whole, weighing both the evidence that supports and the

9  evidence that detracts from the Commissioner's conclusion." *Id.* (internal quotation marks and

10  citation omitted). If the evidence is susceptible to more than one rational interpretation, the ALJ's

11  findings must be upheld if supported by reasonable inferences drawn from the record. *Id.*

12  Finally, even when the ALJ commits legal error, the ALJ's decision will be upheld so long

13  as the error is harmless. *Brown-Hunter*, 806 F.3d at 492. However, "[a] reviewing court may not

14  make independent findings based on the evidence before the ALJ to conclude that the ALJ's error

15  was harmless." *Id.* The court is "constrained to review the reasons the ALJ asserts." *Id.*

16  **B.     Standard for Determining Disability**

17  Disability benefits are available under Title II of the Social Security Act when an eligible

18  claimant is unable "to engage in any substantial gainful activity by reason of any medically

19  determinable physical or mental impairment which can be expected to result in death or which has

20  lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

21  423(d)(1)(A).

22  "To determine whether a claimant is disabled, an ALJ is required to employ a five-step

23  sequential analysis, determining: (1) whether the claimant is doing substantial gainful activity;

24  (2) whether the claimant has a severe medically determinable physical or mental impairment or

25  combination of impairments that has lasted for more than 12 months; (3) whether the impairment

26  meets or equals one of the listings in the regulations; (4) whether, given the claimant's residual

27  functional capacity, the claimant can still do his or her past relevant work; and (5) whether the

28  claimant can make an adjustment to other work." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th

United States District Court
Northern District of California

3

1   Cir. 2014) (internal quotation marks and citations omitted).  The residual functional capacity, or

2   RFC, referenced at step four is what a claimant can still do despite his or her limitations.  *Id.* at

3   1160 n.5.  "The burden of proof is on the claimant at steps one through four, but shifts to the

4   Commissioner at step five."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir.

5   2009).

6   **III.   DISCUSSION**

7        The ALJ determined that Plaintiff had acquired sufficient quarters of coverage to remain

8   insured through December 31, 2016.  AR 10.  At step one, the ALJ determined that Plaintiff had

9   not engaged in substantial gainful activity since her alleged onset date of January 17, 2011.  AR

10  12.  At step two, the ALJ found that Plaintiff has a severe combination of impairments consisting

11  of "diabetes mellitus with mild neuropathy and retinopathy; and obesity."  *Id.*  At step three, the

12  ALJ concluded that Plaintiff's impairments do not meet or medically equal the severity of one of

13  the listed impairments in the regulations.  AR 14-15.

14       Prior to making a step four determination, the ALJ found that Plaintiff has the RFC to

15  perform a full range of sedentary work.  AR 15.  In making that finding, the ALJ discounted in

16  part the RFC assessment of Plaintiff's treating physician, Dr. Yoon Jung Cho.  AR 17-18.  In

17  particular, the ALJ discounted Dr. Cho's opinions that Plaintiff can sit for only two hours in an

18  eight-hour day, can use her fingers only 5-10% of the time, and has impaired concentration.  AR

19  18.  The ALJ also found that Plaintiff's subjective complaints regarding pain and other symptoms

20  are "not entirely credible."  AR 16.

21       At step four, the ALJ concluded that based upon the sedentary RFC, Plaintiff could

22  perform her past relevant work as a clerical assistant/data entry.  AR 18-19.  The ALJ made an

23  alternative step five determination that even if Plaintiff could not perform past relevant work she

24  could perform other sedentary jobs existing in the national economy.  AR 19.  The ALJ reached

25  these determinations based in part upon a series of hypotheticals posed to the VE which assumed

26  an individual of Plaintiff's age, education, and work experience with various RFCs.  AR 19-20.

27       Plaintiff challenges the ALJ's step four and alternative step five determinations, asserting

28  that the ALJ failed to give sufficient reasons, supported by the record, for discounting Dr. Cho's

4

United States District Court
Northern District of California

opinion and her own subjective complaints.

A.     **The ALJ Articulated Specific and Legitimate Reasons, Supported by Substantial Evidence, for Discounting the Opinion of Plaintiff's Treating Physician, Dr. Cho**

Plaintiff first argues that the ALJ failed to give sufficient reasons, supported by the record, for discounting the RFC provided by Plaintiff's treating physician, Dr. Cho.

"Generally, the opinion of a treating physician must be given more weight than the opinion of an examining physician, and the opinion of an examining physician must be afforded more weight than the opinion of a reviewing physician." *Ghanim*, 763 F.3d at 1160. "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it will be given controlling weight." *Id.* (internal quotation marks, citation, and brackets omitted). If the treating physician's opinion is contradicted by the opinion of another physician, the ALJ may reject the treating physician's opinion but only based upon "specific and legitimate reasons that are supported by substantial evidence." *Id.* (internal quotation marks and citation omitted).  In determining how much weight to give a treating physician's opinion, the ALJ must consider the following factors:  the length of the treatment relationship and the frequency of examination by the treating physician, the nature and extent of the treatment relationship between the patient and the treating physician, the supportability of the physician's opinion with medical evidence, and the consistency of the physician's opinion with the record as a whole." *Id.* (internal quotation marks, citation, and brackets omitted).  "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228 (internal quotation marks, citation and alteration omitted).

In this case, the opinion of Plaintiff's treating physician, Dr. Cho, is contradicted by the opinions of three non-examining, reviewing physicians retained by the Commissioner.  Thus on review this Court's task is to determine whether the ALJ provided "specific and legitimate reasons that are supported by substantial evidence" for rejecting Dr. Cho's opinion.

1   The opinions of Dr. Cho and the state agency reviewing physicians,[3] and the weight given

2   to each by the ALJ, are summarized below:

3   **1.   Dr. Cho (Treating Physician)**

4   Dr. Cho is Plaintiff's primary treating physician.  The administrative record contains

5   medical records from Dr. Cho dating from 2008 through 2012.  AR 196, 274-277, 512-544.  On

6   March 29, 2012, Dr. Cho completed a "Form: Diabetes Mellitus Residual Functional Capacity

7   Questionnaire," which, if credited, would result in a RFC precluding even sedentary work.  AR

8   274-277.  Dr. Cho checked boxes indicating that Plaintiff:  experiences pain or other symptoms

9   severe enough to cause constant interference with attention and concentration; is incapable of even

10  low stress jobs; can sit for only one hour at a time; can stand for only 5 minutes at a time; can sit

11  or stand/walk less than two hours in an eight-hour workday; and will need unscheduled breaks

12  every one to two hours.  AR 276.  She also indicated that Plaintiff can use her fingers only 5-10%

13  of the time; cannot use her hands or arms at all; and must avoid all exposure to cold, heat,

14  chemicals, dust, cleaners, and the like.  AR 276-77.  Dr. Cho found Plaintiff to have postural

15  limitations such that she can never:  lift, carry, twist, stoop, crouch/squat, climb ladders, or climb

16  stairs.  AR 276.  Under "Clinical findings," Dr. Cho wrote that Plaintiff has "Diminished

17  proprioception of both feet,"[4] and "Decreased eye sights [sic] due to retinopathy."  AR 274.  Dr.

18  Cho indicated by box-check that Plaintiff is not a malingerer.  *Id.*

19  The ALJ concluded that these limitations are not consistent with the record evidence.

20  Specifically, the ALJ found that the evidence "demonstrates that the claimant has a greater

21  capacity for sitting, standing, walking, lifting, and carrying than Dr. Cho finds."  AR 18.  The ALJ

22  also stated that "while the claimant has complained of numbness and tingling in her fingers, no

23

24  ───────────────

[3] The record contains medical evidence from other providers, including Mitra Emami, M.D., a
25  neurologist, and Sun H. Kim, M.D., an assistant professor at Stanford's Endocrinology Clinic.
    *See, e.g.,* AR 222-23, 291-325.  While the ALJ referred to those medical records in other portions
26  of her written decision, the ALJ did not discuss those records when evaluating Dr. Cho's opinion.

27  [4] "Proprioception is defined as a sense or perception, usually at a subconscious level, of the
    movements and position of the body and especially its limbs, independent of vision."  *Hill v.*
28  *Astrue*, No. 03:11-CV-01014-HU, 2013 WL 1294650, at *6 n.5 (D. Ore. Feb. 4, 2013) (internal
    quotation marks, citation, and alteration omitted).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    doctor has described any objective findings to substantiate those complaints, suggesting that she

2    does not have any limitation on her ability to use her fingers." *Id.* The ALJ noted that Plaintiff

3    "has not alleged any difficulties reaching or handling, and it is not clear why Dr. Cho identifies

4    limitations in these areas." *Id.* The ALJ likewise noted that Plaintiff has not complained of

5    problems interacting with the environmental conditions listed by Dr. Cho and that Plaintiff does

6    not have a breathing condition that would cause such problems. *Id.* Finally, the ALJ observed

7    that "none of the claimant's treatment providers has ever noted that she seems to have trouble

8    maintaining attention or concentration during appointments or following instructions, or that she

9    appears to have particular difficulty tolerating stress." *Id.*

10         Because the ALJ concluded that Dr. Cho's opinion is not well supported by the medical

11   evidence, the ALJ gave Dr. Cho's opinion "very little weight." *Id.*

12                    **2.    Dr. Jensine Wright (Reviewing Physician)**

13         Dr. Jensine Wright, an agency reviewing physician, opined that Plaintiff:  can sit for six

14   hours in an eight-hour workday, stand/walk for six hours in an eight-hour workday, has no

15   limitation on use of her fingers, and has no limitation regarding exposure to cold, heat, fumes,

16   dust, and the like.  AR 411.  Dr. Wright also found that Plaintiff can occasionally lift twenty

17   pounds and frequently lift ten pounds, and that Plaintiff has very few postural limitations with the

18   exception of climbing ladders/ropes, or scaffolds, which she is never to do.  AR 410.

19         The ALJ concluded that Dr. Wright's opinion "is not entirely consistent" with the record

20   evidence.  AR 17.  In particular, the ALJ concluded that in light of Plaintiff's obesity and

21   neuropathy with decreased sensation in the feet, Plaintiff likely cannot stand or walk for six hours

22   in an eight-hour day as found by Dr. Wright.  *Id.* The ALJ found it more reasonable that Plaintiff

23   can stand or walk for two hours in an eight-hour day.  *Id.* The ALJ also found that Plaintiff likely

24   is more limited posturally and in her ability to lift and carry than found by Dr. Wright.  *Id.*

25         However, the ALJ found Dr. Wright's conclusion that Plaintiff can sit for six hours each

26   work day to be supported by the evidence, noting that Plaintiff "has not described any significant

27   difficulty sitting, and there is no objective evidence to suggest that she cannot perform the sitting

28   outlined by Dr. Wright."  AR 17.  The ALJ also found Dr. Wright's failure to assign manipulative

restrictions to be supported by the evidence, stating that "no doctor has noted abnormalities in her hands, and electrodiagnostic testing of her upper extremities performed in June 2012 was entirely normal." *Id.*

Accordingly, the ALJ gave Dr. Wright's opinion "some weight." AR 17.

### 3.   Dr. F. Greene (Reviewing Physician)

Dr. F. Greene, an agency reviewing physician, found that Plaintiff can sit for six hours in an eight-hour workday, stand/walk for six hours in an eight-hour workday, has no limitation on use of her fingers, and has no exposure limitations. AR 270-71. Dr. Greene found no postural limitations whatsoever. AR 271.

The ALJ concluded that Dr. Greene overestimated Plaintiff's exertional capacity for the same reasons that the ALJ rejected Dr. Wright's opinion regarding Plaintiff's ability to walk, stand, and lift. AR 18. The ALJ gave "little weight" to Dr. Greene's opinion. *Id.*

### 4.   Dr. R. Fast (Reviewing Physician)

Dr. R. Fast, an agency reviewing physician, noted that Plaintiff has difficulty with fatigue but found that she can do light work with no limitations. AR 190. The ALJ concluded that Dr. Fast overestimated Plaintiff's exertional capacity for the same reasons that the ALJ rejected Dr. Wright's opinion regarding Plaintiff's ability to walk, stand, and lift. AR 18. The ALJ gave "little weight" to Dr. Greene's opinion. *Id.*

### 5.   Analysis

As is apparent from the above summaries, the ALJ was presented with physicians' opinions that are in conflict regarding limitations that are key to determining whether Plaintiff retains the RFC to do sedentary work. In some instances the ALJ found Dr. Cho's opinions to be better supported by the record, for example, with respect to some postural limitations and limitations on standing, walking, and lifting. The ALJ supported her reliance on Dr. Cho's opinion on these points with specific reference to Plaintiff's obesity, neuropathy, and decreased sensation in the feet.

In other instances the ALJ found Dr. Wright's opinions to be better supported by the record, for example, with respect to Plaintiff's limitations on sitting and use of her fingers. The

United States District Court
Northern District of California

ALJ supported her reliance on Dr. Wright's opinion on these points pointing out that Plaintiff has not complained of problems sitting and that the record evidence does not suggest a severe limitation on sitting (as opposed to record evidence that clearly suggests severe limitations on standing and walking).  Similarly, with respect to the use of fingers, the ALJ pointed to normal electrodiagnostic testing of Plaintiff's upper extremities and the absence of record evidence that Plaintiff has severe limitations on her ability to use her fingers.

Finally, with respect to Plaintiff's abilities to concentrate and deal with stress, the ALJ simply found Dr. Cho's opinion to be unsupported by the record evidence even though there was no conflicting opinion from Dr. Wright on that point.  The ALJ determined that none of Plaintiff's treatment providers had ever documented problems with concentration or stress and found that absent such documentation there was no basis for Dr. Cho's opinion.

Plaintiff asserts that the ALJ erred because "substantial evidence" supports the RFC provided by Dr. Cho.  *See* Pl.'s MSJ at 6, ECF 11.  As an initial matter, the relevant legal question is not whether substantial evidence supports the RFC determined by *Dr. Cho*, but whether substantial evidence supports the RFC determined by *the ALJ*.  Plaintiff argues that Dr. Cho's opinion is supported by various records documenting Plaintiff's pain, fatigue, and difficulty walking.  Those are not the aspects of Dr. Cho's opinion that the ALJ rejected.

The key aspects of Dr. Cho's opinion that the ALJ rejected in order to determine that Plaintiff retains the RFC to perform sedentary work are the limitations on sitting, fingering, and concentration.  Sedentary work by definition is a job "which involves sitting."  20 C.F.R. § 404.1567(a), 416.967(a).  Moreover, the VE testified that a person with Plaintiff's vocational profile (age, education, and prior work experience) would be able to perform Plaintiff's past relevant work of data entry, a sedentary position, only if she could perform "continuous fingering."  AR 69, 71.  If that hypothetical person were limited to no more than "frequent handling or fingering," she could not perform Plaintiff's past relevant work of data entry, but she could perform other sedentary jobs such as appointment clerk, information clerk, or receptionist.  AR 71.  However, if that hypothetical person had impaired concentration such that she could do only simple, repetitive tasks, she would not be qualified for any jobs in the national economy.  AR

United States District Court
Northern District of California

73.

The section of Plaintiff's brief challenging the ALJ's rejection of Dr. Cho's opinion does not refer to any evidence whatsoever regarding Plaintiff's capacity to sit or finger. With respect to the issue of concentration, Plaintiff cites to the Exertion Questionnaire that she completed at the request of the Commissioner, specifically to her statement that her medications leave her "very forgetful at times disoriented." AR 154. Plaintiff also cites to her testimony that she is able to concentrate for only a short time before losing focus. AR 62. While Plaintiff's subjective complaints could, if credited, support a determination of impaired concentration, the ALJ made an adverse credibility finding as to Plaintiff's subjective complaints regarding concentration. That adverse credibility finding is supported by the record, as discussed below. Thus Plaintiff's citation to her subjective complaints of impaired concentration does not undermine the ALJ's rejection of Dr. Cho's opinion.

Having considered the administrative record as a whole, the Court concludes that the ALJ took a measured approach in determining Plaintiff's RFC and that she articulated legitimate and specific reasons, supported by substantial evidence, for rejecting Dr. Cho's opinion as to certain limitations.

### B.     The ALJ Articulated Specific, Clear and Convincing Reasons for the Adverse Credibility Determination Regarding Plaintiff

Plaintiff next argues that the ALJ erred in failing to fully credit Plaintiff's subjective complaints of pain and other symptoms.

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Ghanim*, 763 F.3d at 1163 (internal quotation marks and citation omitted). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotation marks and citation omitted). "If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms

if she gives specific, clear and convincing reasons for the rejection."[5]  *Id.* (internal quotation marks and citation omitted).

### 1.      Plaintiff's Complaints of Pain and Other Symptoms

At the hearing, Plaintiff testified that she suffers from pain in her feet that makes them feel "swollen and burning" or sometimes like she is "walking on needles."  AR 62-63.  Plaintiff also occasionally feels something like an electrical shock in her legs or in her hands.  AR 63.  Mostly the pain comes on when Plaintiff is on her feet, but sometimes it happens when she is not walking. *Id.*  Plaintiff testified that she can concentrate for only a little while and then she will lose focus. AR 62.  She gets very sleepy and rests throughout much of the day.  AR 62, 65.  Sometimes Plaintiff has difficulty focusing her eyes, and they hurt if she goes outside without sunglasses.  AR 63-64.

Plaintiff testified that she drives, but only to the grocery store "when, like something small," and to take her granddaughter to school a couple blocks away each morning.[6]  AR 60. Plaintiff testified that when she gets back from dropping her granddaughter off, she eats breakfast, makes her bed, "and that's about it."  AR 61.  She does use the computer to access Facebook and read the newspaper. *Id.*  She naps.  AR 65.

Plaintiff also submitted an Exertion Questionnaire at the request of the Social Security Administration.  ECF 153-57.  In the questionnaire, she stated that she can be on her feet for only a short time before she is in "deep pain."  AR 154.  Plaintiff goes on a short walk – about a half of a mile – daily, using a cane, but must stop if she gets short of breath or dizzy.  AR 154, 156.  She indicated that her medications make her forgetful and sleepy.  AR 154.  She also indicated that she does laundry twice a week and shops for groceries with her husband once a week.  AR 155.  She does some housework/chores but must stop when she becomes short of breath and dizzy.  AR 156.

---

[5] The Commissioner disputes application of the "clear and convincing reasons" standard to credibility determinations.  The Ninth Circuit has rejected the Commissioner's position on this point.  *See Brown-Hunter*, 806 F.3d at 493.

[6] Plaintiff's granddaughter does not live with her; she is dropped off at Plaintiff's home every morning so that Plaintiff can drive her to school.  AR 61.

### 2. ALJ's Credibility Determination

At the first step of the credibility analysis, the ALJ concluded that Plaintiff presented evidence of medically determinable impairments that reasonably could be expected to cause the alleged symptoms. AR 16. However, at the second step of the analysis the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible." *Id.* The ALJ made no finding of malingering. *Id.* Under the standards articulated above, the ALJ's adverse credibility determination may be upheld only if she has given "specific, clear and convincing reasons," for the determination.

With respect to Plaintiff's statements about symptoms in her hands, the ALJ observed that although physical examinations revealed decreased sensation in Plaintiff's feet and diminished reflexes in the lower extremities, "no treating or examining clinician has ever noticed decreased sensation or dexterity in her hands." AR 16. The ALJ also stated that, "[l]ikewise, no provider has suggested that she appears particularly fatigued. *Id.* The ALJ followed these statements with a lengthy string citation to particular medical records. *Id.*

The ALJ also observed that although Plaintiff testified that she has trouble performing routine daily tasks, she "also indicated that she can do chores around the house, grocery shop, drive, and prepare meals, and she has told various treatment providers that she folds laundry, exercises, walks with her granddaughter, takes care of her daughter." AR 16-17. The ALJ supported this statement with a string citation to record evidence. AR 17. The cited evidence supports the ALJ's statements regarding Plaintiff's ability to do some daily chores, except that the Court did not find reference to meal preparation in the cited evidence.

The ALJ found that Plaintiff does not fully follow her doctor's recommendations regarding diet, blood glucose monitoring, and weight loss. AR 17. The hearing transcript contains a colloquy between the ALJ and Plaintiff in which the ALJ questioned Plaintiff about her failure to monitor and regulate her glucose, which she must do in order to properly adjust her medication level. AR 66-67. The ALJ concluded that Plaintiff's "ability to engage in a range of daily activities, and her decision not to fully follow her doctors' recommendations, all suggest that [Plaintiff's] symptoms are not as severe or as limiting as she claims. AR 17.

United States District Court
Northern District of California

1    The ALJ noted that Plaintiff has complained that her medications cause her to feel sleepy

2    and affect her ability to focus, but found that Plaintiff "has not discussed these side effects with

3    her treatment providers, and those clinicians have not made any objective findings consistent with

4    drowsiness or diminished concentration." AR 17.  The ALJ concluded that "[t]ogether, this

5    implies that these side effects are not as problematic as the claimant has indicated." *Id.*

6    ### 3.    Analysis

7    Before addressing each of the reasons proffered by the ALJ for her adverse credibility

8    determination, the Court observes that the ALJ has satisfied the Ninth Circuit's directive that

9    "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible

10   and what evidence undermines the claimant's complaints." *Brown-Hunter*, 806 F.3d at 493.

11   Here, the ALJ identified with particularity which of Plaintiff's complaints she found not credible,

12   and cited specific record evidence in support of her adverse credibility determination.

13   Accordingly, the Court must evaluate the cited evidence to determine whether it supports the

14   adverse credibility determination under the applicable clear and convincing standard.

15   The Court first addresses the ALJ's conclusion that Plaintiff's ability to do some basic

16   household chores undermines her subjective complaints.  "Engaging in daily activities that are

17   incompatible with the severity of symptoms alleged can support an adverse credibility

18   determination." *Ghanim*, 763 F.3d at 1165.  "Daily activities may also be grounds for an adverse

19   credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits

20   involving the performance of physical functions that are transferable to a work setting." *Id.*

21   (internal quotation marks and citation omitted).  However, the Ninth Circuit has "repeatedly

22   warned that ALJs must be especially cautious in concluding that daily activities are inconsistent

23   with testimony about pain, because impairments that would unquestionably preclude work and all

24   the pressures of a workplace environment will often be consistent with doing more than merely

25   resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).  Here, Plaintiff's

26   description of her daily activities was entirely consistent with her subjective complaints of pain

27   and other symptoms.  Plaintiff takes short walks for exercise but at times must stop because of

28   pain, fatigue, or dizziness.  She shops at the grocery store, but only for small things or with her

13

United States District Court
Northern District of California

1    husband.  She drives her granddaughter to school each day, which takes only five minutes.  At the

2    hearing, Plaintiff testified that she drives her granddaughter "so I can have something to make me

3    get up, otherwise I'd be just sleeping in all the time."  AR 61.  These very limited activities are not

4    inconsistent with Plaintiff's subjective complaints and thus do not support the ALJ's adverse

5    credibility determination.

6         The Court next addresses the ALJ's reliance upon the absence of clinical findings

7    regarding Plaintiff's claimed fatigue and drowsiness.  Based upon the Court's review of the

8    record, the ALJ's characterization of the evidence is accurate.  However, the record does reflect

9    that Plaintiff reported fatigue and drowsiness during several medical appointments, and that

10   Plaintiff attributed her drowsiness to her medications at one appointment.  AR 231, 238, 244, 254,

11   259, 336.  Those reports were not made to Plaintiff's primary treating physician, but to Dr. Sun H.

12   Kim, M.D., an assistant professor at Stanford's Endocrinology Clinic.  *Id.*  The Court concludes

13   that the absence of clinical findings to support Plaintiff's claims of fatigue and drowsiness does

14   not constitute a clear and convincing reason for an adverse credibility determination given

15   documentation that Plaintiff did tell her doctors of those symptoms.

16        However, the ALJ's adverse credibility determination is supported by Plaintiff's failure to

17   fully follow her doctor's recommendations regarding glucose monitoring.  Plaintiff alleged that

18   her fatigue and drowsiness resulted from fluctuations in her glucose and side effects of

19   medication.  As discussed above, Plaintiff testified that she failed to monitor and regulate her

20   glucose, which she must do in order to properly adjust her medication level.  AR 66-67.  A

21   claimant's failure to follow prescribed treatment can support an adverse credibility determination.

22   *See Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012).  The ALJ found that Plaintiff's failure

23   to follow her doctor's directions suggested that Plaintiff's symptoms are not so severe or limiting

24   as she claims.  The Court concludes that this reason for discounting Plaintiff's symptoms is

25   supported by the record and meets the clear and convincing standard.

26        The absence of any medical records documenting a decrease in sensation or dexterity in

27   Plaintiff's hands supports the ALJ's adverse credibility determination regarding those claimed

28   symptoms.  It is not clear to the Court that Plaintiff actually alleged a decrease in sensation or

United States District Court
Northern District of California

1    dexterity regarding her hands.  She did not mention those symptoms in her testimony or her

2    Exertion Questionnaire, and the Court could not find any medical records in which she

3    complained of diminished dexterity.  However, the RFC prepared by Plaintiff's treating physician,

4    Dr. Cho, indicates severe limitations on Plaintiff's use of hands and fingers.  As discussed above,

5    Plaintiff's ability to finger was critical to the ALJ's determination that Plaintiff retains the RFC to

6    perform sedentary work.[7]  The Court presumes that the ALJ addressed the issue of dexterity for

7    that reason.

8        Given the extensive medical documentation regarding decreased sensation in Plaintiff's

9    feet and her related difficulties walking and standing, the absence of any such documentation

10   regarding decreased sensation or dexterity in Plaintiff's hands is glaring.  The absence of such

11   documentation – or indeed any record that Plaintiff complained of diminished dexterity – supports

12   the ALJ's finding.  *See Peterson v. Comm'r of Soc. Sec. Admin.,* No. 3:15-cv-01023-HZ, 2016 WL

13   1029481, at *5 (D. Ore. March 15, 2016) ("The total absence of any objective medical evidence

14   about Petersen's cough is a legitimate basis to discount the credibility of his claims about the

15   limiting effects of those symptoms.").  The only clinical findings addressing Plaintiff's hands

16   indicated that "[t]he sensory nerve studies of upper extremities were normal."  AR 312.

17       Plaintiff points to two instances in which medical records note that Plaintiff complained of

18   hand pain during office visits.  AR 313, 342.  However, the ALJ did not reject Plaintiff's

19   complaints that she suffers hand pain.[8]  The ALJ's focus was on Plaintiff's claim that she cannot

20   work in part because her diabetes "limits her ability to use her hands."  AR 16.  The Court

21   concludes that the ALJ has provided specific, clear and convincing reasons, supported by the

---

[7] Also critical were the ALJ's determinations that Plaintiff can sit for six hours in an eight-hour workday and that Plaintiff can maintain sufficient concentration to perform more than simple, repetitive tasks.  Plaintiff's subjective complaints did not include an inability to sit.  Plaintiff's complaints regarding inability to concentrate are addressed below.

[8] The Ninth Circuit has held that "the adjudicator may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence."  *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991).  As discussed herein, the ALJ did not reject Plaintiff's allegations that she suffers hand pain, but rather evaluated record evidence regarding Plaintiff's alleged diminished dexterity.

1   record, for failing to credit Plaintiff's subjective complaints regarding limited ability to use her

2   hands.

3          The Court likewise concludes that the ALJ's citation to the absence of any medical records

4   indicating that Plaintiff raised concentration issues with her doctors, or any clinical findings

5   regarding diminished concentration, supports the ALJ's conclusion that Plaintiff's claimed

6   diminished concentration is not as problematic as Plaintiff indicates.  A claimant's "unexplained

7   or inadequately explained failure to seek treatment" is a factor that an ALJ may consider in

8   weighing a claimant's credibility.  *See Chaudhry*, 688 F.3d at 672.  The Ninth Circuit has held

9   specifically that if a claimant complains of disabling pain but fails to seek treatment, the ALJ may

10  use such failure as a basis for finding the complaint unjustified or exaggerated.  *Id.*  The Court

11  concludes that Plaintiff's failure to raise her claimed diminished concentration with her doctors

12  constitutes a specific, clear and convincing reason for failing to credit Plaintiff's subjective

13  complaints regarding that symptom.

14         **C.     Conclusion**

15         It is clear from the record that Plaintiff suffers from a serious disease and that she endures

16  significant pain and other symptoms on a daily basis.  However, this Court's task in performing

17  the very limited review permitted by law is to determine whether the ALJ applied the correct legal

18  standards and whether her written decision is supported by evidence in the record.  If the evidence

19  could support either a favorable or an unfavorable outcome for Plaintiff, the ALJ's decision must

20  be upheld.  *Rounds*, 807 F.3d at 1002.  In this case, the ALJ applied the correct legal standards and

21  her findings are supported by the record evidence.

22  **IV.   ORDER**

23         For the foregoing reasons, IT IS HEREBY ORDERED that:

24         (1)    Plaintiff's motion for summary judgment is DENIED; and

25         (2)    Defendant's motion for summary judgment is GRANTED.

26

27  Dated:  March 23, 2016

28                                          BETH LABSON FREEMAN
                                            United States District Judge

United States District Court
Northern District of California

16